UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Civil Action No.: 1:14cv533 |
| | ) | |
| THE CITY OF AUSTIN, | ) | |
| TEXAS, | ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

Plaintiff, United States of America ("United States"), alleges:

1. This action is brought on behalf of the United States to enforce provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII").

2. This Court has jurisdiction of this action under 42 U.S.C. §§ 2000e-5(f) and 2000e-6(b), 28 U.S.C. §§ 1331, 1343 and 1345.

3. Defendant, the City of Austin, Texas ("City" or "Defendant"), is a governmental body created pursuant to the laws of the State of Texas and located within this judicial district.

4. The City is a "person," within the meaning of 42 U.S.C. § 2000e(a), and an "employer," within the meaning of 42 U.S.C. § 2000e(b).

5. The City maintains a fire department, the Austin Fire Department ("AFD"), and employs entry-level firefighters.

6. Subject to the requirements of Texas Local Government Code Chapter 143, the City is responsible for establishing the terms, conditions and other practices that relate to the selection and employment of entry-level firefighters.

7. During most of the relevant time period, the City has been exempt from certain requirements of Texas Local Government Code Chapter 143 because, as permitted by that statute, it entered into a collective bargaining agreement ("CBA") with the union that represents its sworn personnel.

8. The most recent CBA between the City and the Austin firefighters' union allowed the City to use a different hiring process for entry-level firefighters than the one set forth in Chapter 143. The CBA expired on October 1st, 2014.

9. Since at least 2011, the City has administered, and continues to administer, at least one written examination as part of its entry-level firefighter selection process.

10. Entry-level firefighter applicants who met the minimum qualifications set by the City in each particular hiring cycle were invited to take the written examination(s).

## 2012 Entry-Level Firefighter Selection Process

11. In May 2012, the City administered a written examination that purports to measure cognitive abilities and behavioral traits ("NFSI") to approximately 2,600 applicants as part of the entry-level firefighter selection process.

12. On the same day, the City also administered a second written test that purports to measure counterproductive work behaviors ("Integrity Inventory").

13. The City set the nominal passing score for the NFSI at a raw score of 70. Applicants who did not achieve a raw score of 70 on the NFSI were eliminated from consideration to be an Austin entry-level firefighter.

14. This resulted in a statistically significant disparity between the pass rates of African-American candidates and white candidates equal to 9.10 units of standard deviation, and

2

a statistically significant disparity between the pass rates of Hispanic candidates and white candidates equal to 7.77 units of standard deviation.

15. In addition, in 2012, the City invited only the applicants with 1,500 highest NFSI scores who also passed the Integrity Inventory to participate in the next step of the selection process, a Structured Oral Interview ("SOI"). As a result, many candidates who achieved a raw score of 70 on the NFSI and passed the Integrity Inventory were nevertheless eliminated from the selection process.

16. Due to the City's decision to only invite the top 1,500 NFSI scorers who also passed the Integrity Inventory to participate in the SOI, no applicant who scored below 75.06 on the NFSI was permitted to proceed to the SOI. This resulted in an effective NFSI cutoff score of 75.06.

17. The use of the NFSI as a pass/fail device with an effective cutoff score of 75.06 to screen applicants for entry-level firefighter hiring has caused a statistically significant adverse impact upon African-American and Hispanic applicants.

18. Using an effective cutoff score of 75.06 resulted in a statistically significant disparity between the pass rates of African-American candidates and white candidates equal to 9.72 units of standard deviation, and a statistically significant disparity between the pass rates of Hispanic candidates and white candidates equal to 8.75 units of standard deviation.

19. Specifically, approximately 80% of whites who took the NFSI achieved a score of at least 75.06 on the NFSI, while only approximately 48.8% of African-American test-takers and 59.4% of Hispanic test-takers achieved a score of at least 75.06.

20. The difference in the effective NFSI pass rates of African-American applicants compared to white applicants is statistically significant.

21. The difference in the effective NFSI pass rates of Hispanic applicants compared to white applicants is statistically significant.

22. The City cannot demonstrate that either its pass/fail use of the NFSI with a nominal cutoff score of 70 or its use of an effective cutoff score of 75.06 as described in Paragraphs 13, 15 and 16 is job related for the position in question and consistent with business necessity.

23. In 2012, the City also used the applicants' scores on the NFSI as part of a composite score generated for applicants who were invited to, completed and passed the SOI.

24. The City calculated an applicant's composite score by weighting and combining the applicant's NFSI and SOI scores. The NFSI score accounted for one-third of the composite score, and the SOI accounted for two-thirds of the composite score.

25. Where applicable, the City added military points to the composite score to generate a total score for each applicant. For applicants who did not have military points, the composite score and total score were the same.

26. The City placed applicants on an initial eligibility list in descending rank order based on total scores, and processed applicants through the remaining steps in the selection process based on their places on the list ("2012 rank order practice").

27. Because the City processed applicants for hiring in descending rank order from the list, many applicants who effectively passed the NFSI (*i.e.*, scored 75.06 or above) and passed the Integrity Inventory and passed the SOI did not rank high enough to be processed for hire.

28. The 2012 rank order practice described in Paragraphs 23 through 27 has had a statistically significant adverse impact on African-American entry-level firefighter applicants.

29. The 2012 rank order practice described in Paragraphs 23 through 27 has had an statistically significant adverse impact on Hispanic entry-level firefighter applicants.

30. Specifically, African-American and Hispanic applicants ranked lower, on average, on the initial eligibility list than white applicants.

31. The difference in ranks of African-American applicants compared to white applicants is statistically significant.

32. The difference in ranks of Hispanic applicants compared to white applicants is statistically significant.

33. Additionally, the mean composite scores of African-American and Hispanic applicants on the initial eligibility list are lower than the mean scores of white applicants.

34. The difference in mean scores of African-American applicants compared to white applicants is statistically significant.

35. The difference in mean scores of Hispanic applicants compared to white applicants is statistically significant.

36. The City cannot demonstrate that the 2012 rank order practice described in Paragraphs 23 to 27 is job related for the position in question and consistent with business necessity.

2013 Selection Process

37. In 2013, the City used a different set of selection devices to screen entry-level firefighter applicants.

38. The selection devices included a written test ("NELF"), different from the NFSI, that purported to measure cognitive abilities and behavioral traits, administered to more than 2,800 applicants in May 2013.

39. The City invited all entry-level firefighter applicants who took the NELF to participate in the next step of the selection process, which was the administration of a different SOI. Approximately 2,000 applicants who had taken the NELF participated in the 2013 SOI.

40. The City announced its intention to calculate composite scores for 2013 entry-level firefighter applicants by converting the raw NELF score to a 20-point scale and the raw SOI score to an 80-point scale, adding those two scores together, then adding military points where applicable to arrive at a total score.

41. The City later determined it would not score or otherwise take into account an applicant's responses to the "behavioral trait" items of the NELF.

42. The City planned to place 2013 entry-level firefighter applicants on an initial eligibility list in descending rank order based on total scores, and to process applicants through the remaining steps in the hiring process in descending rank order ("2013 rank order practice").

43. The 2013 rank order practice described in Paragraphs 40 to 42 will result in statistically significant adverse impact on African-American and Hispanic applicants.

44. The City cannot demonstrate that the 2013 rank order practice described in Paragraphs 40 through 42 is job related for the position in question and consistent with business necessity.

45. Even if the City could demonstrate that its method of use for the 2013 assessments was job related for the position in question and consistent with business necessity, there exists another method of use for those assessments that would be equally valid but would result in less adverse impact against protected groups.

### The United States' Pattern or Practice Claim Pursuant to Section 707 of Title VII

46. Plaintiff United States re-alleges Paragraphs 1 through 45, *supra*, as if fully set forth herein.

47. Defendant has pursued and continues to pursue policies and practices that discriminate against African Americans and Hispanics and that deprive or tend to deprive African Americans and Hispanics of employment opportunities because of their race and/or national origin, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. Defendant has implemented these policies and practices, among other ways, by:

    a. Using, in the screening and selection of applicants for appointment to the rank of entry-level firefighter, a written examination as a pass/fail screening device, where such use of the written examination resulted in statistically significant disparate impact upon African Americans and Hispanics, and was not job related for the position in question and consistent with business necessity;

    b. Rank-order processing, in the screening and selection of applicants for appointment to the rank of entry-level firefighter, which results in statistically significant disparate impact upon African Americans and Hispanics, in a manner not job related for the position in question and not consistent with business necessity;

    c. Failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices;

    d. Failing or refusing to make whole those African-American and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by the unlawful use of a cut-off score on the 2012 written examination as described in Paragraphs 13, 15 and 16; and

  e. Failing or refusing to make whole those African-American and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by the unlawful 2012 rank order practice described in Paragraphs 23 through 27.

 48. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the Department of Justice, has conducted an investigation of the policies and practices of Defendant City of Austin with respect to its screening and selection of applicants for appointment to the rank of entry-level firefighter as such practices affect African Americans and Hispanics and has notified Defendant City of Austin of that investigation.

 49. The policies and practices of Defendant City of Austin described in Paragraphs 1 through 45, *supra*, constitute a pattern or practice of resistance to the full enjoyment by African Americans and Hispanics of their right to equal employment opportunities without discrimination based upon race and/or national origin, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6.  Unless restrained by order of this Court, the City will continue to pursue policies and practices that are the same as or similar to those alleged in this Complaint.

 50. Wherefore, Plaintiff United States prays for an order enjoining Defendant City of Austin, its officers, agents, employees, successors and all persons in active concert or participation with them from engaging in discriminatory employment practices against African Americans on the basis of race and against Hispanics on the basis of national origin, and specifically from:

  a. Using, in the screening and selection of applicants for appointment to the rank of entry-level firefighter, written examinations as pass/fail screening devices, where such use of the written examinations results in statistically significant disparate impact upon African Americans and Hispanics, is not job related for the

8

position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

b. Rank-order processing of applicants, in the screening and selection of applicants for appointment to the rank of entry-level firefighter, based on the applicants' written examination scores combined with scores on other selection devices, plus military points, where such use of applicants' total scores results in statistically significant disparate impact upon African Americans and Hispanics, is not job related for the position in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c. Failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices;

d. Failing or refusing to make whole those African-American and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by its unlawful use of a cut-off score on its written examinations as described in Paragraphs 13, 15 and 16; and

e. Failing or refusing to make whole those African-American and Hispanic applicants for appointment to the rank of entry-level firefighter who have been harmed by its unlawful use of the rank order practice described in Paragraphs 23 through 27.

51. Plaintiff United States prays for an order requiring the City to provide sufficient remedial relief, including back pay with interest and priority hiring with retroactive seniority, to

make African-Americans and Hispanics whole for the loss they have suffered as a result of discrimination against them as alleged in this Complaint.

    52.    Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Date:  June 9, 2014             Respectfully submitted,

JOCELYN SAMUELS
Acting Assistant Attorney General
United States Department of Justice
Civil Rights Division

By: _____
DELORA L. KENNEBREW (GA Bar No. 414320)
Chief
United States Department of Justice
Civil Rights Division
Employment Litigation Section

_____
MEREDITH BURRELL (MD Bar, No number issued)
Deputy Chief

_____
SHAYNA BLOOM (DC Bar No. 498105)
TREVOR BLAKE (DC Bar No. 974319)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue NW
Washington, DC  20530
Telephone:  (202) 616-9100
Fax:  (202) 514-1005
E-mail:  shayna.bloom@usdoj.gov
E-mail:  trevor.blake@usdoj.gov

Counsel for Plaintiff United States of America