FILED

2014 NOV -7 PM 12: 06

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY‾‾‾‾‾‾‾‾‾‾‾‾
DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.: 1:14cv533** |
| | ) | |
| **THE CITY OF AUSTIN,** | ) | |
| **TEXAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CONSENT DECREE

# TABLE OF CONTENTS

I.   BACKGROUND .............................................................................................. 1

II.  STIPULATIONS ............................................................................................ 2

III. RELIEF UNDER THIS DECREE ................................................................. 8

  A.   DEFINITIONS AND PARTIES ................................................................. 8

  B.   PURPOSES OF THIS CONSENT DECREE ............................................ 9

  C.   INJUNCTIVE RELIEF ............................................................................... 9

    1.   General Injunctive Relief ................................................................... 9

    2.   Interim Hiring Process ..................................................................... 10

    3.   Recruitment of Firefighters ............................................................. 11

    4.   Decree Compliance Officer ............................................................. 12

    5.   Claims Administrator ....................................................................... 12

    6.   Use of Lawful Selection Procedures ............................................... 13

  D.   FAIRNESS HEARING ON TERMS OF CONSENT DECREE ................... 17

  E.   ENTRY OF THE CONSENT DECREE ..................................................... 21

  F.   INDIVIDUAL RELIEF .............................................................................. 21

    1.   Settlement Fund ............................................................................... 21

    2.   Monetary Relief Awards from the Settlement Fund ........................ 21

    3.   Preliminary Eligibility for Individual Relief .................................. 22

    4.   Potentially Eligible Claimants to Submit Interest in Relief Form ... 23

    5.   Priority Hiring Relief and Retroactive Seniority ............................ 24

    6.   Determination of Claimants' Eligibility for Individual Relief ........ 28

7.   Filing of Individual Relief Lists ................................................................. 29

8.   Fairness Hearing on Individual Relief ........................................................ 30

9.   Approval of Final Backpay Awards List and Final Priority Hire Candidate List ......... 32

10.  Notice of Individual Relief Awards and Acceptance and Release ............................... 32

G.   RECORD RETENTION AND PRODUCTION ............................................................. 36

IV.  DISPUTE RESOLUTION ...................................................................................... 37

V.   DURATION OF CONSENT DECREE ..................................................................... 38

VI.  COSTS AND FEES .............................................................................................. 39

VII. MISCELLANEOUS .............................................................................................. 39

# LIST OF APPENDICES

APPENDIX A    Definitions

APPENDIX B    Interim Hiring Process Under Paragraph III.C.2

APPENDIX C    Notice of Settlement and Fairness Hearing, Instruction for Filing an Objection to the Terms of the Consent Decree, and Objection to the Entry of Consent Decree Form

APPENDIX D    Notice of Entry of Consent Decree and Interest in Relief Form

APPENDIX E    Procedures for Priority Hiring Relief Under Paragraph III.F.5

APPENDIX F    Cover Letter re Fairness Hearing on Individual Relief

APPENDIX G    Instructions on Filing an Objection to Individual Relief and Objection Form

APPENDIX H    Notice of Award of Individual Relief

APPENDIX I    Acceptance of Backpay and/or Consideration for Priority Hire Job Offer and Release of Claims

## I.      BACKGROUND

This action was brought by the United States against the City of Austin ("City") to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII").  This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6 and 28 U.S.C. §§ 1343(a)(3) and 1345.

In its Complaint, the United States alleges that the City has engaged in unlawful employment practices by utilizing selection procedures that have the effect of depriving or tending to deprive African Americans and Hispanics of employment opportunities because of their race and/or national origin, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).  The United States does not allege in its Complaint that the City engaged in intentional discrimination.

Specifically, the United States alleges that the City's pass/fail use of an entry-level fire cadet written examination and its processing of entry-level fire cadet applicants in descending rank-order, have each resulted in an adverse impact upon African-American and Hispanic applicants for fire cadet positions.  The United States further alleges that these practices have not been shown to be sufficiently job related for the position of fire cadet and consistent with business necessity.

This action alleges disparate impact discrimination.  The United States does not allege in its Complaint that the City has intentionally discriminated against any person or group of persons under Title VII.

## II.    STIPULATIONS

The City denies that it has violated Title VII.  Nevertheless, the United States and the City, desiring that this action be settled by an appropriate consent decree ("Decree") and without the burdens of protracted litigation, agree to the jurisdiction of this Court over the Parties and the subject matter of this action.  The United States and the City further agree to the entry of this Decree as final and binding between themselves as to the issues raised in the United States' Complaint in this action.  Subject to the Court's approval of this Decree, the Parties waive findings of fact and conclusions of law on all issues, except as to the following, which the Parties stipulate and which the Court finds[1]:

### Background of the Firefighter Hiring Process

A. The City hires entry-level firefighters through a competitive selection process.  That selection process is governed in part by Chapter 143 of the Texas Local Government Code, which establishes certain requirements for entry-level hiring within the fire departments of cities – including the City of Austin – that have adopted its provisions.  During the years at issue in this case, the City's hiring process has also been governed in part by the terms of a collective bargaining agreement between the City and the Austin Firefighters Association, Local 975, a labor organization that represents Austin firefighters.  That agreement expired in October 2013, and there is no bargaining agreement in effect as of the date of this Decree.

---

[1]  The facts are based on the declarations of the United States' experts, which are attached to the Parties' joint memorandum in support of entry of this Decree.

B. During the years at issue in this case, the City's hiring process has been a multi-step, sequential process in which applicants were required to meet minimum standards at each step in order to move forward to the next step in the process. In general, the design of the hiring process included a written application, a written cognitive-behavioral skills assessment, an oral skills assessment, and other pre-employment assessments.[2] All applicants who successfully completed the application step were invited to take the written cognitive-behavioral skills assessment, which was administered to all applicants at the same time and in the same location. After the cognitive-behavioral assessments were scored, some or all of the applicants were invited to participate in the oral skills assessments, which were administered several weeks later. In 2012, some of those applicants who achieved a successful score on the oral skills assessment were invited to participate in the battery of other pre-employment assessments. Applicants who successfully passed these other assessments would be placed on a ranked eligibility list for hiring based on their scores on the cognitive and oral assessments. Applicants were then offered job positions with the Austin Fire Department in rank order from the eligibility list.

C. Applicants selected from the eligibility list receive an offer of employment to become a fire cadet, which is the entry-level position in the Austin Fire Department. The fire cadet position is a trainee position in which the fire cadets undergo roughly six months of full time classroom and field work conducted at the Austin Fire Department's training academy. Fire

---

[2] The City's other pre-employment assessments included a physical ability test, criminal background screening, psychological and medical testing, and drug testing. These assessments are not at issue in this litigation.

cadets are required to pass several assessments during this training, including obtaining required certifications from the State of Texas as both firefighters and emergency medical technicians. Following completion of their six-month training program and successful completion of their state certifications, fire cadets are commissioned as probationary firefighters. They remain in probationary status for several additional months, during which they participate in further training and testing.

## The 2012 Hiring Process

D. In 2012, the selection process used by the City in the screening and selection of applicants for the fire cadet position included the administration of a written cognitive-behavioral examination called the National Firefighter Selection Inventory ("NFSI"). Applicants could not be considered further for the fire cadet position unless they took and passed the NFSI. Use of the NFSI specifically as the written cognitive assessment was a requirement of the collective bargaining agreement then in effect between the City and Local 975. That collective bargaining agreement has since expired.

E. In May 2012, as part of the fire cadet selection process, the City administered the NFSI to approximately 2,600 applicants who met minimum qualifications, including approximately 1,114 white applicants, approximately 328 African-American applicants and approximately 902 Hispanic applicants. The City set the passing score for the NFSI at 70 (nominal passing score).

F. On the same day, the City also administered a second written test, the Integrity Inventory (I2).

G. Applicants who achieved a passing score of 70 on the NFSI, achieved a passing score on the I2, and who were also among the top 1,500 NFSI scorers were invited to participate in an oral assessment called the Structured Oral Interview ("SOI").

H. The City's decision to administer the SOI assessment only to those NFSI and I2 passers who were also among the top 1,500 NFSI scorers resulted in the elimination of NFSI and I2 passers who scored less than 75.06 on the NFSI (effective passing score).

I. In 2012, both African-American and Hispanic applicants on average passed the NFSI at a lower rate than white applicants, using either the nominal or the effective passing score. The disparity in pass rates is statistically significant and sufficient to establish a *prima facie* case of disparate impact discrimination under Title VII.

J. Applicants who passed the SOI were placed on an eligibility list in descending rank-order based on their total scores. Total scores were created by combining NFSI scores, weighted one-third, and SOI scores weighted two-thirds, then adding military points where applicable.

K. The City processed applicants for further consideration in descending rank order based on applicants' total scores.

L. In 2012, both African-American and Hispanic applicants on average ranked lower on the eligibility list than white applicants. The disparity in rankings is statistically significant and sufficient to establish a *prima facie* case of disparate impact discrimination under Title VII.

M. Absent the disparate impact resulting from the City's pass/fail use of the NFSI and from the City's determination and use of total scores to process applicants in descending rank order,

the United States estimates that an additional 12 African-American applicants would have

been offered employment as fire cadets from the 2012 list.  The City does not contest this

estimate.

N.  Absent the disparate impact resulting from the City's pass/fail use of the NFSI and from the

City's determination and use of total scores to process applicants in descending rank order,

the United States estimates that an additional 18 Hispanic applicants would have been

offered employment as fire cadets from the 2012 list.  The City does not contest this estimate.

O.  The United States contends that the City cannot demonstrate that its use of the NFSI as a

pass/fail screening device is sufficiently job related for the position of fire cadet and

consistent with business necessity.[3]

P.  The United States contends that the City cannot demonstrate that its use of total scores to

process applicants from eligibility lists in descending rank order in 2012 is job related for the

position of fire cadet and consistent with business necessity.[4]

Q.  The United States contends that the amount of seniority lost by African-American and

Hispanic applicants from 2012 to the present as a result of the City's pass/fail use of the

NFSI and from the City's determination and use of total scores to process applicants in

_____

[3] The United States does not contend in this action that the City's use of the SOI assessment was unlawful.

[4] The United States also contends that alternative Selection Devices exist to select candidates for entry-level firefighter positions that would have served the City's legitimate needs and that have been demonstrated to have less adverse impact.  Since these stipulations proceed under the theory that the challenged employment practices are not sufficiently demonstrably job related and consistent with business necessity, it is unnecessary to set forth these alternatives.

descending rank order exceeds the seniority awarded to Claimants under this Decree.  The City does not contest this contention.

R.  The United States represents that the relief provided by this Decree does not exceed make-whole relief to individuals who would be considered victims of the practices challenged by the United States, and the procedures set forth in this Decree for identifying claimants and allocating relief among them is lawful, reasonable and equitable.

## The 2013 Hiring Process

S.  In 2013, the City changed both the written cognitive test instrument and the oral test instrument used in its fire cadet hiring process, and changed the weighting of the scores on these assessments used to arrive at a total score.

T.  The 2013 written cognitive-behavioral examination was the National Entry-Level Firefighter examination ("NELF").  The oral test instrument was an assessment created by the same vendor who provided the NELF.

U.  In May 2013, the City administered the NELF to over 2,500 applicants, of whom approximately 1,037 were white, approximately 361 were African-American, and approximately 1,112 were Hispanic.

V.  All applicants who took the NELF were invited to take the oral assessment.  In July 2013, the City administered the oral assessment to over 2,000 applicants of whom approximately 714 were white, approximately 231 were African American, and approximately 803 were Hispanic.

W.  The City initially proposed to hire applicants based on a combination of NELF scores, created using responses to the cognitive items only, and SOI scores, with NELF scores accounting for 20 percent of the composite score and oral assessment scores accounting for 80 percent of the composite score.  The City proposed to add military points to that composite to arrive at a total score.  The City would then process candidates in descending rank order based on total scores.

X.  After initially calculating scores for those who took both the NELF and Structured Oral Interview in 2013, the United States advised the City that it believed that ranking applicants based on their total scores and processing them in descending rank order will have adverse impact on both Hispanic and African-American applicants, and that the disparities between rankings of applicants in those groups and of white applicants are statistically significant. The City does not dispute these statistical findings.

Y.  The United States contends, and for purposes of this Decree the City does not dispute, that acceptable job-related alternatives exist that are equally valid and result in less adverse impact.

## III.    RELIEF UNDER THIS DECREE

In resolution of this action, with the consent of the Parties, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

## A.  DEFINITIONS AND PARTIES

1.  The "Parties" to this Decree are the United States, by the Department of Justice ("United States"), and the City of Austin, Texas ("City").

2. Terms used in Part III of this Decree shall have the meanings set forth in Appendix A to this Decree, unless expressly stated otherwise.

**B.      PURPOSES OF THIS CONSENT DECREE**

The purposes of this Decree are to ensure that:

1. The City does not violate Title VII by using policies or practices that have an adverse impact upon either African-American or Hispanic applicants for the position of fire cadet and are not sufficiently job related for the position of fire cadet and consistent with business necessity, or that otherwise violate the Title VII rights of African American or Hispanic applicants to become fire cadets; and

2. The City utilizes lawful selection procedures that will serve the purposes of ensuring that fire cadet hiring is based on merit and that the City's selection procedure does not unnecessarily exclude qualified African-American and Hispanic applicants; and

3. The City provides, as appropriate, monetary relief and/or priority appointment relief with retroactive seniority to qualified persons who were denied a job as a fire cadet due to the employment practices challenged by the United States in this case.

**C. INJUNCTIVE RELIEF**

**1.  General Injunctive Relief**

a. Except as provided in this Decree, the City, its officials, agents, employees, and successors, and all persons acting on behalf or in active concert or participation with it, are enjoined from using any Selection Device for the position of fire cadet

that has an adverse impact upon African-American or Hispanic applicants on the basis of race and is not sufficiently job related for the position of fire cadet and consistent with business necessity, or otherwise does not meet the requirements of Title VII.

b.  The City is specifically enjoined from using any written cognitive assessment test as part of its selection process for fire cadets in any manner that results in disparate impact upon African-American or Hispanic applicants and is not shown to be sufficiently job related or consistent with business necessity under Title VII or, if job related and consistent with business necessity under Title VII, from refusing to adopt an alternative employment practice that exists within the meaning of 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

## 2.  Interim Hiring Process

a.  The United States contends, and the City does not contest, that the City's proposed use of the Selection Devices administered in 2013 would result in unlawful disparate impact against African-American and Hispanic applicants. As a result, the City suspended the 2013 hiring process prior to the filing of this action.

b.  The Parties recognize that proper development of a new, lawful hiring process will take time, and that the City has immediate operational needs that may require the hiring of fire cadets prior to the implementation of a new hiring process in accord with Paragraph III.C.6 of this Decree. If so, in order to address the City's

immediate operational need to staff its fire department while mitigating the

potential adverse impact resulting from use of the 2013 Selection Devices, the

Parties agree that the City may process applicants and hire fire cadets from among

those individuals who completed both the NELF cognitive assessment and oral

assessment in 2013 using the process set out in Appendix B to this Decree, which

allows the list generated from that process to be used on a limited basis.

3. **Recruitment of Firefighters**

a.  In order to encourage qualified Hispanics and African Americans to apply for fire

cadet positions, the City shall, within 60 days of the Date of Entry of this Decree,

develop and submit to the United States a written recruitment plan for fire cadets.

The recruitment plan shall include recruitment objectives, staffing, budget, media to

be used, and a description of how the City intends to make the public aware of

employment opportunities as an Austin fire cadet and firefighter.  The City shall

appoint one or more of its Fire Department employees to coordinate and participate in

recruitment activities as part of the employees' regular duties.

b.  The City shall advertise the dates and times of its application period and the

administration of its selection procedures for fire cadet by:  (a) issuing testing

announcements at least 60 days prior to the closing date for submitting an application;

(b) advertising in the <u>Austin American-Statesman</u> at least thirty (30) days prior to the

closing date; (c) posting fire cadet testing announcements on the City's website with a

link to the applicable application for at least 45 days prior to the closing date; (d)

posting fire cadet testing announcements in each City Department where job

announcements are posted at least 45 days prior to the closing date; (e) sending a

copy of each such testing announcement at least 45 days prior to the closing date to

the Texas Workforce Commission for statewide distribution and to the placement

officer of each two-year and four-year post-secondary school in the Austin area.

c.  The City shall make its applications for fire cadet positions available on its website,

and shall permit fire cadet applicants to submit applications through its online

application process.

## 4. Decree Compliance Officer

The City shall designate a person who shall be primarily responsible for enforcing the

provisions of this Decree.  This person's responsibilities shall include, but not be limited

to, ensuring that the City fully implements and complies with all paragraphs of this

Decree, and receiving complaints of discrimination on the basis of race and/or national

origin in the screening, selection and appointment of entry-level firefighters.

## 5. Claims Administrator

a.  Within 30 days following the execution of this Decree by the Parties, the City shall

enter into a contract with a Claims Administrator, selected by the City and subject to

the approval of the United States, to assist the Parties with the notice and claims

procedure for individual relief.  The City shall bear all costs and expenses of the

Claims Administrator, and the City's contract, also subject to the United States'

approval, will require that the Claims Administrator comply with the provisions of

this Decree as applicable to the Claims Administrator.  The cost of the Claims

Administrator shall be in addition to, and not deducted from, amounts designated as Backpay under this Decree.

b.  The Claims Administrator's contract will require the Claims Administrator to work under the control and supervision of the United States, the City, and the Court in the conduct of its activities, including reporting regularly to and providing all reasonably requested information to the United States, the City of Austin, and the Court.[5]

c.  Within 14 days following the effective date of the City's contract with the Claims Administrator, the City shall provide the Claims Administrator with a mailing list in suitable electronic format of the names and last known mailing addresses and email addresses of all persons and other entitled to notice under Part III.D of this Decree.

6.  **Use of Lawful Selection Procedures**

The City will use lawful selection procedures to select qualified applicants for hiring into the position of fire cadet as set forth below.

a.  If a Selection Device(s) used by the City has statistically significant disparate impact on African Americans or Hispanics, it must be shown to be job related for the fire cadet position in Austin and consistent with business necessity in accord with Title

---

[5] In the event the United States or the City has reason to believe that the Claims Administrator is not materially complying with the terms of its contract with the City, the United States and the City will meet and confer for the purpose of mutually agreeing upon a course of action to effect the Claims Administrator's material compliance with its contract with the City.  In the event that the United States and the City are unable to agree upon a course of action to effect the Claims Administrator's material compliance with its contract with the City, the Parties may present the matter to the Court.

VII.  In deciding to use a Selection Device, the City shall make reasonable efforts to explore the availability of Selection Devices which have been shown to reduce or eliminate disparate impact upon African-Americans and Hispanics in the selection of fire cadets without diminution of job-relatedness.  If it identifies such alternatives, it must use them, subject to any objections raised by the City to the cost of such alternatives, which shall be resolved by agreement of the Parties or by the Court if the Parties cannot agree.

b.  The City will inform the United States not later than 60 days before any planned administration of a new Selection Device(s).  At that time, the United States may request all information available to the City about the development and/or validation of the proposed Selection Device(s), including but not limited to: a description of the Selection Device(s); a description of the manner in which the City intends to use the Selection Device(s); the known or likely disparate impact, if any, of the intended use of the Selection Device(s); all validation studies, analyses, test plans, and any other evidence of job relatedness of the Selection Device(s) available to the City, including data underlying such studies, analyses, test plans, and other evidence; and any basis for a conclusion that the City's proposed use of the Selection Device(s) is job related for the fire cadet position and consistent with business necessity.  The City's submission shall also identify any other Selection Devices, as well as any other manners of using the chosen Selection Device(s), considered by the City.  If the United States does not notify the City in writing that the United States has an objection within 15 business days of receiving the City's complete submission, the City may administer the Selection Device(s).

c.  After administering any Selection Device(s) and before announcing the results to candidates or deciding upon the method of use, in recognition that the job-relatedness and validity of an exam can often be evaluated fully only after the exam has been administered, the City will provide to the United States in Excel format the name, unique identifier, race, national origin, exam score and any applicable sub-scores, and test form identification for all applicants to whom the Selection Device was administered.  At the same time, the City will cause its testing vendor to provide to the United States the answer keys and test question responses for each candidate for each Selection Device.  If the United States determines that the City's proposed use of the Selection Device(s) does not comply with Title VII and with this Decree, the United States shall notify the City in writing within 15 business days of receiving the above-listed information that the United States objects to the City's use of the Selection Device(s).

d.  Upon completion of the administration of all components of the City's fire cadet selection process upon which any eligibility list may be based, the City will provide to the United States in Excel format the name, unique identifier, race, national origin, scores and applicable sub-scores on all components of the selection process, any applicable combined and/or final scores, military or other bonus points, and ranks for each applicant who participated in the selection process, if applicable.  If after the administration of all components of the City's selection process on which any eligibility list may be based, the United States determines that the City's selection process does not comply with Title VII and with this Decree, the United States shall notify the City in writing within 15 business days of receiving the above-listed

information that the United States objects to the City's selection process.

e.   Any objection(s) to the City's use of a Selection Device or overall selection process
made by the United States pursuant to Subparagraphs c or d, above, shall be resolved
under the dispute resolution procedures in Part IV of this Decree.  If either Party
submits any such objection(s) to the Court for resolution under Part IV.A, the Parties
agree that the burdens of proof set forth in 42 U.S.C. § 2000e-2(k) shall apply in
resolving such objection(s).  If the Court determines that the City's proposed
Selection Device, manner of use or overall process does not comply with Title VII,
the City shall not use that Selection Device in that manner or shall not employ that
process without whatever modifications the Court may order.  If an objection to the
City's use of a Selection Device for the fire cadet position or overall hiring process
for the fire cadet position is made by the United States pursuant to this Paragraph, no
person shall be certified for appointment as a fire cadet except by written agreement
of the Parties or order of the Court.

f.   Following the administration of a fire cadet hiring process that was subject to the
review and objection procedures set forth in Subparagraphs a-e, above, the City shall
be authorized to administer and use the Selection Device(s) agreed to by the Parties
pursuant to Subparagraph b above, or ordered by the Court pursuant to Subparagraph
e, above, during the life of this Decree, subject to the requirements of Subparagraph
g, below.  For any subsequent administrations, the City will provide the United States
with at least 90 days' notice of its intent to announce a new fire cadet selection
process.  The City's notice shall state whether the City intends to administer the same

Selection Devices and overall selection processes as previously agreed to by the Parties or ordered by the Court, or whether it intends to make any changes to the Selection Devices or their manner of use.

g. If the City intends to make any changes to the Selection Devices or their manner of use in a subsequent administration of a fire cadet hiring process, the review and objection procedures set forth in Subparagraphs b through e, above, shall apply. If the City does not intend to make any changes to the Selection Devices or their manner of use in a subsequent administration of a fire cadet hiring process, including the limited use of the 2013 exam set forth in this Decree, the City will produce to the United States the data and information required by Subparagraphs b through d, above, for the subsequent administration.

h. Due to the importance of test security, along with concerns about the proprietary nature of test development materials, all correspondence and communications between and among the Parties and their test developers, consultants and/or experts in connection with performance of the obligations set forth in Subparagraphs b through d, above, shall be held confidential and shall not be disclosed to any third party in the absence of a Court order compelling such disclosure, or the written consent of the adverse party, or as otherwise required by law.

## D. FAIRNESS HEARING ON TERMS OF CONSENT DECREE

1. Upon execution of this Decree, the Parties shall promptly file a joint motion for the provisional approval and entry of the Decree by the Court and request a Fairness Hearing

on the Terms of the Consent Decree to allow the Court to determine whether the terms of the Decree are fair, reasonable and consistent with Title VII. The Parties will request that the Court provide at least one hundred (100) days' notice of the date and time set for this Fairness Hearing on the Terms of the Consent Decree.

2. The purpose of the Fairness Hearing on the Terms of the Consent Decree and the related notification provisions of this Decree is to provide to all persons who may be affected by the terms of the Decree notice and an opportunity to present objections prior to final entry of the Decree, in accordance with Section 703(n) of Title VII, 42 U.S.C. § 2000e-2(n).

3. No later than 60 days prior to the Fairness Hearing on the Terms of the Consent Decree, the Claims Administrator shall provide a copy of a Notice of Settlement and Fairness Hearing, Instructions for Filing an Objection to the Terms of the Consent Decree, and a blank Objection to the Entry of the Consent Decree, in the formats set forth in Appendix C:

   a. Via electronic mail, with tracking capability, to the last known e-mail address of each Claimant identified as preliminarily eligible for relief under Paragraph III.F.3, below. However, if an e-mail is not opened within seven days of the day it is sent, the City will send a Notice of Settlement and Fairness Hearing, Instructions for Filing an Objection to the Terms of the Consent Decree, and a blank Objection to the Entry of the Consent Decree, with a cover letter in the formats set forth in Appendix C via first-class U.S. mail to the last known address of that individual;

   b.  To each applicant in the City's 2013 hiring process who took and completed both

       the NELF examination and the 2013 oral assessment;

   c.  To each Fire Cadet and Firefighter, as defined in Appendix A, via hand delivery

       at the place of the person's employment, by certified mail with return receipt

       requested, or as an attachment to or enclosure with each such person's regularly

       distributed paycheck; and

   d.  Via certified U.S. mail, return receipt requested, to each union or association

       recognized as being authorized to represent firefighters in Austin.

4.  At or before the time notices are provided pursuant to Paragraphs 3.a – 3.c, above, the

    City shall provide to the United States a list stating the name and last known mailing

    address and email address of each person or entity to whom such notice is being sent.

5.  In addition, the City shall publish a notice, in a form substantially the same as contained

    in the cover letter in Appendix C to this Decree, in the Wednesday, Friday and Sunday

    editions of the *Austin American-Statesman*.  The published notice shall appear with a

    headline in bold typeface, surrounded by a dark border, shall be no smaller than 6 inches

    by 10 inches in size, and shall be placed in the local news section or other prominent

    location agreed to by the Parties.  All such newspaper notices shall be published for five

    (5) days, concluding no later than 60 days prior to the date set for the Fairness Hearing on

    the Terms of the Consent Decree.  The notice should also appear in the same format on

    the "Current Applicants" website of the Austin Fire Department, using the same web

    address as was used for 2012 and 2013 fire cadet applicants to check their application

status.

6. Persons who wish to object to the terms of the Decree shall file objections, in accordance with the requirements set forth in Appendix C, and as follows:

    a. Objections shall state the objector's name, address and telephone number; set forth a specific description of the objector's basis for objecting; include copies of any documentation supporting the objections; state the name and address of the objector's counsel, if any; and state whether the objector wishes the opportunity to be heard in Court at the Fairness Hearing on the Terms of the Consent Decree.

    b. Objections shall be mailed to the Claims Administrator at the address provided for this purpose by the Claims Administrator to the Parties.

    c. Objections must be mailed and postmarked to the Claims Administrator no later than thirty (30) days prior to the date set for the Fairness Hearing on the Terms of the Consent Decree. Any person who fails to do so shall be deemed to have waived any right to object to the terms of this Decree, except for good cause as determined by the United States and approved by the Court if the City of Austin objects to the United States' determination. The Claims Administrator shall promptly email copies of all objections it receives to the Parties.

7. No later than 10 days prior to the Fairness Hearing on the Terms of the Consent Decree, the United States shall file with the Court copies of all objections received from the Claims Administrator. In addition, no later than 10 days prior to the Fairness Hearing on the Terms of the Consent Decree, the Parties shall file their responses, if any, to all

objections received from the Claims Administrator.

## E. ENTRY OF THE CONSENT DECREE

If the Court determines that the terms of this Decree are fair, reasonable, and consistent with Title VII, the Court shall enter the Decree at or following the Fairness Hearing on the Terms of the Consent Decree.

## F. INDIVIDUAL RELIEF

### 1. Settlement Fund

Within 30 days after the Date of Entry of this Decree by the Court, the City shall set aside the sum of $780,000.00 in its payroll account (with these funds hereinafter referred to as the "Settlement Fund").

### 2. Monetary Relief Awards from the Settlement Fund

a.  The Settlement Fund shall be used by the City to make Backpay awards to eligible African-American and Hispanic Claimants.

b.  The City shall be responsible for and remit to the appropriate taxing authorities the employer portion of all federal and state payroll taxes applicable on any monetary relief award paid to a Claimant, including employer contributions to Medicare and the Social Security fund.  Such taxes shall not be deducted from any Claimant's monetary relief award, and such amounts shall not be payable from the Settlement Fund.

c.  To the extent required by law, the City shall withhold from each Claimant's monetary

relief award the employee portions of all federal and state payroll taxes, including federal income taxes, Medicare and Social Security taxes, and any other applicable taxes. Such amounts shall be deducted from the Settlement Fund, and the City shall remit such amounts to the appropriate taxing authorities in accord with applicable law.

3.  **Preliminary Eligibility for Individual Relief**

a.  Claimants potentially eligible for relief under this Decree include all African-American and Hispanic applicants for the fire cadet position in 2012 who took the NFSI and either:

  i.   Were considered by the City to have failed the NFSI because they received a score of less than 70 but passed the I2;

  ii.  Were not permitted to proceed to the SOI because they received a score of less than 75.06 but passed the I2; or

  iii. Passed the NFSI with a score of 75.06 or higher and passed the I2, but ranked below the last applicant appointed from the 2012 eligibility list.

b.  Potentially eligible Claimants as defined in this Paragraph who are hired through the Interim Hiring Process in Appendix B remain eligible to seek monetary relief and retroactive seniority.  In order to be eligible for monetary relief under this Decree, a Claimant need not express an interest in, or be eligible for, a Priority Hire position or accept an offer of employment from the City.

c.  Within 30 days after the Date of Entry of this Decree, the City shall provide to the Claims

Administrator mailing addresses and email addresses of all potentially eligible Claimants. Within 14 days following receipt of this information the Claims Administrator shall send each potentially eligible Claimant a copy of the Notice of Entry of Consent Decree and Interest-in-Relief Form attached to this Decree as Appendix D. Such notice shall be sent by e-mail and by certified U.S. mail, return receipt requested, to the addresses provided by the City.

d.  The Claims Administrator shall keep records of all notices sent pursuant to Paragraph 4.b. that are returned as undeliverable. Within 21 days of the mailing of the notices required by Paragraph 3.b, the Claims Administrator shall provide to the United States and the City a list of all delivered and undelivered notices, and a copy of all notices, envelopes and mail receipts for all persons to whom a notice was sent.

e.  The Claims Administrator will conduct a reasonable search for an alternative address for any potentially eligible Claimant whose notice was returned as undeliverable, then promptly re-mail the notice to the alternative address for that individual by certified U.S. mail, return receipt requested. If requested, the City shall provide to the Claims Administrator any information reasonably available to the City that may allow the Claims Administrator to locate an alternative address for any person whose notice was returned as undeliverable.

4. **Potentially Eligible Claimants to Submit Interest in Relief Form**

a.  Any Claimant who wishes to be considered for an award of individual relief under this Decree must return the completed Interest in Relief Form (Appendix D) to the Claims

Administrator no later than 75 days from the Date of Entry of this Decree. Any Claimant who fails to do so shall be deemed to have waived any right to be considered for an award of individual relief under this Decree, except for good cause as determined by the United States and approved by the Court if the City objects to the United States' determination.

b.  The date the Interest in Relief Form was mailed or otherwise delivered to the Claims Administrator shall be deemed the date of return of the Claimant's form. In the event an Interest-in-Relief Form is returned by U.S. mail, but no date of mailing is indicated by a postmark of the United States Postal Service, or if the postmark is illegible, the date of return of the Interest in Relief Form shall be deemed to be five days prior to the date the form was received by the Claims Administrator.

c.  As soon as practicable upon receipt of an Interest in Relief Form, the Claims Administrator will forward copies of each returned Interest in Relief Form to the United States and to the City via electronic mail, to addresses to be specified by the Parties.

**5.    Priority Hiring Relief and Retroactive Seniority**

The Decree contemplates a process in which the United States creates a list of those preliminarily eligible for priority hire. The Court will then approve a final Priority Hire Candidate List following the fairness hearing on individual relief. The individuals on that approved list will be eligible to participate in the process described in Appendix E, and based on that process, the City will create the Priority Hire List.

a.  All Claimants who (i) submit a timely Interest in Relief form under Paragraph 4, above, and (ii) indicate affirmatively an interest in a Priority Hire position on their Interest in Relief form, shall be included in the process for determining Priority Hires described in this Paragraph.

b.  Following the fairness hearing on individual relief described in Paragraph III.F.8 below, and the administration of the new lawful selection procedure developed under the Decree, the City shall create Priority Hire Lists of qualified candidates following the procedures in Appendix E.  The names and scores of Claimants on the Priority Hire Lists shall remain confidential between the Parties and shall not be disclosed except by order of the Court, or as otherwise required by law.

c.  The City shall provide each Priority Hire List created under Appendix E to the United States within five business days after it is created.  The United States may object to any Claimant on a Priority Hire List by providing written notice of such objection to the City within 10 business days of its receipt of the Priority Hire List.  The United States and the City shall meet and confer in good faith to resolve any objections made by the United States.  If the Parties are unable to resolve any objection(s), either Party may submit the issue to the Court for determination.  The Court will find that any objection by the United States to a Claimant on a Priority Hire List is well-founded only if the United States establishes that the presence or position of the Claimant on the Priority Hire List did not comply with the selection process established in this Decree.

d.  Upon completion of the objection process described in Subparagraph c, above, the City shall designate 30 fire cadet job positions as Priority Hire positions. These Priority Hire

positions shall be allocated as follows: twelve (12) shall be filled by Claimants from the approved African-American Priority Hire List; and eighteen (18) shall be filled by Claimants from the approved Hispanic Priority Hire List.

e.  The City shall offer employment as a fire cadet in the first cadet academy starting after completion of the selection process in Subparagraph c, above, to the Claimants in the highest six (6) places on the African American Priority Hire List, and the Claimants in the highest nine (9) places on the Hispanic Priority Hire List.

f.   The City shall offer employment as a fire cadet in the second cadet academy starting after completion of the selection process in Subparagraph c, above, to the Claimants in the remaining highest six (6) places on the African American Priority Hire List, and the Claimants in the remaining highest nine (9) places on the Hispanic Priority Hire List.

g.  The City shall make offers of employment to Claimants on the Priority Hire Lists in writing by e-mail with tracking capability to each Claimant's last known e-mail address and by certified U.S. mail (return receipt requested).  The offer of employment shall prominently indicate:

    i.    That the offer is a Priority Hire offer made pursuant to this Decree;

    ii.   That upon the successful completion of the fire cadet academy and commissioning as an Austin firefighter, the Claimant will be entitled to Retroactive Seniority as provided by this Decree;

iii.   The beginning salary and the benefits the Claimant will receive if the offer is accepted, as well as the salary and benefits the Claimant will be eligible to receive after successful completion of the fire cadet training academy;

iv.    The date on which the Claimant will begin the fire cadet academy if the offer is accepted;

v.    The respective telephone numbers and names at which the Claimant may contact the United States and the City with any questions regarding the Priority Hire offer; and

vi.   That the Claimant has at least 15 days from the date on which the written offer of employment was sent to notify the City in writing whether the Claimant accepts the offer.  Failure to do so shall constitute rejection of the offer and shall disqualify the Claimant from further eligibility for a Priority Hire.

h.   Each Claimant who accepts an employment offer under Paragraph 5 shall be deemed a Priority Hire for purposes of meeting the City's obligation under Subparagraph d, above. Acceptance of an employment offer under Paragraph 5, above, shall constitute an automatic withdrawal by the Claimant from any other Austin Fire Department hiring process in which the Claimant may be an active candidate at that time.

i.   The City shall notify the United States within seven days of any rejection by a Claimant of a Priority Hire offer of employment, and shall provide the United States with a copy of any written rejection from the Claimant.

j.  In the event a Claimant rejects a Priority Hire offer of employment, or begins employment as a fire cadet but subsequently resigns, dies, or is involuntarily terminated from employment prior to the date the Claimant is commissioned as an Austin firefighter, the City shall make a Priority Hire offer of employment to the highest remaining Claimant from the same Priority Hire List for a position in the next fire cadet academy. If that occurs, the Claimant accepting the employment offer shall be counted in place of the first Claimant for purposes of the meeting the City's priority hiring obligation in Subparagraph d, above.

k.  On the date a Priority Hire is commissioned as a probationary firefighter following successful completion of the fire cadet academy, the City shall credit the Priority Hire with Retroactive Seniority as provided in Appendix A in the City's personnel and payroll records.

6.  **Determination of Claimants' Eligibility for Individual Relief**

a.  The United States, with the assistance of the Claims Administrator, shall determine each Claimant's Backpay share of the Settlement Fund such that the shares are distributed pro rata among all eligible and interested Claimants. The United States and the City, with the assistance of the Claims Administrator, shall determine the Claimants eligible to participate in the Priority Hire selection process under Appendix E.

b.  No later than 105 days after the Date of Entry of this Decree, the United States shall provide the City with: (i) a preliminary Backpay Awards List that identifies all Claimants it finds potentially eligible for Backpay relief based on the Interest in Relief forms

received by the Claims Administrator, and (ii) a preliminary Priority Hire Candidate List

that identifies all Claimants it finds eligible to participate in the Priority Hire selection

process under Appendix E based on the Interest in Relief forms received by the Claims

Administrator.  If the United States determines that a Claimant who sought Backpay

and/or Priority Hire relief is not eligible for such relief, the submissions under this

subparagraph shall include the reason(s) for that determination.

c.   No later than 135 days after the Date of Entry of this Decree, the City shall notify the

United States in writing if it objects to any of the United States' determinations regarding

preliminary eligibility for Backpay and/or Priority Hire relief.  To the extent that the

parties are unable to resolve the City's objections informally, such resolution shall be

subject to the dispute resolution procedures in Part IV of this Decree.

**7.  Filing of Individual Relief Lists**

No later than 180 days after the Date of Entry of the Decree, the United States shall file

under seal with the Court and serve upon the City: (i) the preliminary Backpay Awards List

stating, for each Claimant who timely returned an Interest in Relief form, the share of the

Settlement Fund that the United States has determined should be awarded to the Claimant;

and (ii) the preliminary Priority Hire Candidate List with individuals listed in alphabetical

order by last name.  The City shall have a right to respond to unresolved objections to the

United States' determinations.

8. **Fairness Hearing on Individual Relief**

a. Upon filing the lists described in Paragraph 7, above, the United States shall simultaneously move the Court to hold a Fairness Hearing on Individual Relief to allow the Court to determine whether the preliminary Backpay Relief Awards List and preliminary Priority Hire Candidate List should be approved or amended. The Court will provide the Parties with at least 90 days' notice of the date and time set for the Fairness Hearing on Individual Relief.

b. No later than 60 days before the date set for the Fairness Hearing on Individual Relief, the Claims Administrator shall send, by electronic mail, with tracking capability, to each Claimant at their last known e-mail address: (i) a cover letter, in the format attached as Appendix F, notifying the Claimant of the determinations regarding the Claimant's eligibility for individual relief under the Decree, the reason(s) for any determination that the Claimant is ineligible for any particular form of requested relief, and the Claimant's proposed share of monetary relief as stated on the preliminary Backpay Awards List, if any; and (ii) a Notice of Fairness Hearing on Individual Relief, Instructions for Filing an Objection to Individual Relief and an Objection Form, in the formats attached as Appendix G to this Decree. If an e-mail is not opened within seven days of the day it is sent, the Claims Administrator will send the above-referenced materials via certified U.S. mail, return receipt requested.

c. A Claimant who wishes to object to any determination regarding individual relief as set out in the cover letter (Appendix F) for that Claimant must file written objections as follows:

    i.    Objections must state the Claimant's name, mailing address, telephone number, and e-mail address, if any; set forth a specific description of the Claimant's basis for disputing the relief determinations in the Backpay Relief Awards Lists; include copies of all documentation supporting the objections; state the name, mailing and e-mail addresses, and telephone number of the Claimant's counsel, if any; and state whether the Claimant wishes the opportunity to be heard in court at the Fairness Hearing on Individual Relief.

    ii.    Objections shall be submitted by mailing a copy of the Objection to Determination of Individual Relief form in Appendix G by U.S. mail addressed to the Claims Administrator at the address provided by the Claims Administrator for this purpose.

    iii.    Objections must be postmarked to the above address no later than 30 days prior to the date set for the Fairness Hearing on Individual Relief.

    iv.    The Claims Administrator will promptly e-mail copies of all objections received simultaneously to both the United States and the City, using e-mail addresses to be specified by the Parties.

d.  No later than 21 days prior to the date set for the Fairness Hearing on Individual Relief, the United States shall file with the Court copies of all objections received by the United States.  For those objections received less than 21 days prior to the date set for the Fairness Hearing on Individual Relief, the United States shall file copies of objections received on a rolling basis, weekly.

e.  No later than ten days prior to the Fairness Hearing on Individual Relief, the Parties shall file their responses, if any, to all objections.

9.  **Approval of Final Backpay Awards List and Final Priority Hire Candidate List**

a.  At or following the Fairness Hearing on Individual Relief, the Court shall determine whether any objections to the preliminary Backpay Awards List or the preliminary Priority Hire Candidate List are well-founded.  The Court may approve the lists as submitted or, if the Court finds that any objection with respect to a Claimant is well founded, shall amend the lists consistent with such finding.

b.  The final Backpay Awards List and final Priority Hire Candidate List as approved by the Court will be final and binding on all Parties and interested persons, including without limitation any Claimant who received the notice provided in Appendix F.

c.  The Court will find that an objection to either the preliminary Backpay Awards List or the preliminary Priority Hire Candidate List, including an objection to the amount of monetary relief to be awarded to a Claimant, is well-founded only if the Court finds that the determination reflected in such list was not reasonable, equitable, or consistent with the provisions of this Decree or Title VII.

10.  **Notice of Individual Relief Awards and Acceptance and Release**

a.  No later than 30 days after the Court approves a final Backpay Awards List and a final Priority Hire Candidate List, either at or following the Fairness Hearing on Individual Relief, the Claims Administrator shall provide notice to each Claimant determined by the Court to be entitled to such relief.  The notice shall be by e-mail to the last known e-mail

address of the Claimant with confirmation of receipt and opening requested. The notice shall include the Notice of Award(s) of Individual Relief in the form set forth in Appendix H. If the Claimant is eligible to compete for a Priority Hire position, the notice will include a statement of the Claimant's eligibility for such relief, a description of the remainder of the Priority Hire selection process, and the Retroactive Seniority the Claimant will receive if the Claimant is ultimately made and accepts a Priority hire appointment as a fire cadet. If an e-mail is not opened within seven (7) days of the day it is sent, the Claims Administrator will send the notice via certified U.S. mail, return receipt requested. The Claims Administrator shall also provide to the Claimant:

    i.    An Acceptance of Relief and Release of Claims form as described in the following Paragraph of this Decree; and

    ii.    Any withholding forms necessary for the City to comply with its withholding obligations under law and Paragraph III.F.2 of this Decree.

b.  As a condition of receiving a monetary award and/or consideration for priority hire, each Claimant otherwise entitled to such relief as indicated in the final Backpay Awards List and final Priority Hire Candidate List shall be required to execute an Acceptance of Relief and Release of Claims form as set forth in Appendix I of this Decree, along with all withholding forms if the Claimant is eligible for monetary relief, and return them to the Claims Administrator no later than 60 days after the Court approves the final Backpay Awards List and final Priority Hire Candidate List. The date the Acceptance of Relief and Release of Claims form was mailed or otherwise delivered to the Claims Administrator shall be deemed the date of return of the Claimant's form. In the event

that an Acceptance of Relief and Release of Claims form is returned by U.S. mail but no date of mailing is indicated by a postmark of the United States Postal Service, or if the postmark is illegible, the date of return of the Acceptance of Relief and Release of Claims form shall be deemed to be five days prior to the date the form was received by the Claims Administrator. A Claimant's failure to return an executed Acceptance of Relief and Release of Claims form within the time allowed shall constitute a rejection of the offer of relief and shall release the Parties and the Claims Administrator from any further obligation under this Decree to make an award of relief to that Claimant.

c. No later than 75 days after the Court approves the final Backpay Awards List and final Priority Hire Candidate List, the Claims Administrator shall simultaneously forward to the United States and the City copies of all executed Acceptance of Relief and Release of Claims forms and withholding forms it received from Claimants named in those Lists.

d. If any Claimant listed on the final Backpay Awards List rejects a monetary relief award, the United States shall reallocate the amount of monetary relief allocated to that Claimant to the City for the recruitment of qualified Hispanic and African-American applicants for the position of fire cadet and/or efforts to expand the pool of qualified Hispanic and African-American applicants for the position of fire cadet.

e. No later than 30 days after receiving from the Claims Administrator a Claimant's executed Acceptance of Relief and Release of Claims forms and withholding forms under Subparagraph c, above, the City shall mail via certified U.S. mail (return receipt requested) a monetary relief award check to such Claimant. The amount of the monetary relief award check shall be the amount shown for the Claimant on the Final Backpay

Awards List, less all appropriate taxes and other amounts withheld in accordance with Paragraph III.F.2.

f.  No later than 30 days after the mailing of a monetary relief award check to a Claimant pursuant to Subparagraph e, above, the City shall provide to the United States a copy of such monetary check, along with a statement indicating the amounts withheld from such check and the purpose of each withholding.

g.  No later than 30 days after the mailing of all monetary checks required under this Paragraph, the City shall provide to the United States a list of all checks that have been returned to the City as undeliverable, as well as a statement of the amount of funds remaining in the Settlement Fund.  For all undelivered checks, if reasonable attempts to locate the Claimant prove unsuccessful for 30 days, any amount remaining in the Settlement Fund after such attempts will be used by the City for the recruitment of qualified Hispanic and African-American applicants for the position of fire cadet and/or efforts to expand the pool of qualified Hispanic and African-American applicants for the position of fire cadet, in a manner consistent with the purposes of this Decree.

h.  No later than 60 days after the mailing of all monetary checks required under this Paragraph, the City shall provide to the United States a list of all checks that appear to have been delivered (no returned check), but which have not been cashed.  The City shall mail a letter to such Claimants with un-cashed checks to inform such Claimants that the award will be canceled if the check is not cashed within 60 days from the date of that letter.  The letter shall state that no further warnings regarding such distribution will be given.  If upon the expiration of the 60 days there remain un-cashed checks, the City will

provide the United States with a list of all such outstanding checks as well as a statement of the amount of funds remaining in the Settlement Fund.  Any amount remaining in the Settlement Fund after such time will revert back to the City for use in the recruitment of qualified Hispanic and African-American applicants for the position of fire cadet and/or efforts to expand the pool of qualified Hispanic and African-American applicants for the position of fire cadet, in a manner consistent with the purposes of this Decree.

i.   The City shall provide an accounting of how the remaining funds (from either undelivered or un-cashed checks) were spent on a quarterly basis, with the first report due 90 days after the initial reversion of funds.

## G. RECORD RETENTION AND PRODUCTION

1.   While this Decree remains in effect, the City shall maintain all of the following records (including those created or maintained in electronic form):

a.   All applications for fire cadet positions;

b.   All non-privileged documents relating to the screening, evaluation or selection of applicants for the position of fire cadet;

c.   All non-privileged documents known to the City relating to written or verbal complaints made by any person or organization regarding discrimination on the basis of African-American race and/or Hispanic national origin in the appointment of fire cadets;

d.   All non-privileged documents relating to the evaluation, selection, designation, and/or

employment of Priority Hires under this Decree; and

    e.  All other non-privileged documents relating to the City's compliance with the requirements of this Decree, including but not limited to documents relating to the payment or award of individual relief to any Claimant under this Decree.

2.  Except as otherwise provided in this Decree, the City will make available to the United States, no later than 30 days after the United States so requests in writing, any non-privileged records maintained in accordance with the preceding Paragraph of this Decree and any additional non-privileged documents reasonably relating to any dispute arising under the Decree.  If such requests become unduly burdensome on the City, relief may be sought from the Court.

3.  When possible, without additional expense to the City, all records furnished to the United States shall be provided in a computer-readable format to be agreed upon by the Parties prior to production.

## IV.   DISPUTE RESOLUTION

A.  The Parties shall attempt in good faith to resolve informally any disputes that arise under this Decree.  If the Parties are unable to resolve the dispute expeditiously, either party may submit the disputed issue to the Court for resolution upon 15 days' written notice to the other party, unless a different process or time period is specified in the applicable section of this Decree.

B.  Within 30 days after the United States so requests in writing, the City shall make available in Austin for interview or deposition (at the United States' option) any agent, employee or official of the City who the United States reasonably believes has non-privileged knowledge of information necessary to verify the City's compliance with the terms of this Decree or to resolve a dispute arising under this Decree.  If, after completing discovery, the United States maintains that the City has not complied with the Decree or the dispute still exists, within ten days after the United States communicates that fact to the City, the City may interview or depose any witness with knowledge regarding the matter in dispute.  Under no circumstances may the City interview or depose any officials, agents or employees of the U.S. Department of Justice in this process in the absence of further Court order for good cause shown.

## V.    DURATION OF CONSENT DECREE

A.  Unless otherwise ordered by this Court, and absent the pendency of any motion related to this Decree, this Decree shall expire without further order of the Court on the last to occur of the following events:

1.  Upon fulfillment of the Parties' obligations regarding the individual relief to be awarded under this Decree;

2.  30 days after the establishment of a final eligibility list based on the second administration of the entry-level firefighter examination following the Date of Entry of this Decree; or

3.  Four years from the entry of the Decree.

B. If neither (1) nor (2) has occurred after the passage of four years from the Date of Entry of the Decree, either Party may move the Court for a status hearing to determine a procedure and timeline for fulfilling the Parties' obligations under this Decree. If both (1) and (2) have occurred and four years from the Date of Entry of the Decree have passed, either Party may move to extend the Decree upon good cause shown. Through that process, the Decree may be extended for up to, and no more than, eight years from the Date of Entry of this Decree. Extensions may be granted in increments as long as the final dissolution date is not later than eight (8) years from the Date of Entry of this Decree.

## VI.    COSTS AND FEES

A. Except as otherwise provided herein, each Party shall bear its own costs and expenses incurred as a result of obligations imposed by this Decree, including the cost of all notification and publication procedures described above, which will be borne by the City.

B. Each party shall bear its own costs, expenses, and attorney's fees incurred in this litigation.

## VII.    MISCELLANEOUS

A. The Court shall retain jurisdiction over this Decree for the purpose of resolving any disputes or entering any orders that may be appropriate to implement the Decree.

B. The Parties shall, at a minimum, meet quarterly (in person or by telephone, at the option of the Parties) to discuss any issues relevant to implementation of the Decree.

C. To the extent of any conflict between this Decree and the requirements of any state or local law or regulation, the terms of this Decree shall control.

D. This Decree constitutes the entire agreement of the Parties, and supersedes all prior agreements, representations, negotiations, and undertakings not set forth or incorporated herein.

E. Unless the United States has given express prior authorization for communication by other means, all written information and documents required to be delivered under this Decree to the United States by the City shall be sent via overnight delivery to:

> Austin Fire Department Settlement Team
> Employment Litigation Section
> U.S. Department of Justice
> Civil Rights Division
> PHB, Room 4500
> 601 D Street NW
> Washington, DC  20579

F. Unless the City has given express prior authorization for communication by other means, all written information and documents required to be delivered under this Decree to the City by the United States shall be sent via overnight delivery to:

> City of Austin Law Department
> Attention:  City Attorney
> Post Office Box 1088
> Austin, Texas  78767-1088

Entry of this Consent Decree by the Court is approved and requested by the Parties as of the dates of their signatures below.

[Signatures on following pages]

THE UNITED STATES OF AMERICA

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division
United States Department of Justice

By:

_____
DELORA L. KENNEBREW (GA Bar No. 414320)
Chief
United States Department of Justice
Civil Rights Division
Employment Litigation Section


_____
MEREDITH BURRELL (MD Bar, no number issued)
Deputy Chief


_____
SHAYNA BLOOM (DC Bar No. 498105)
TREVOR BLAKE (DC Bar No. 974319)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW, PHB 4500
Washington, DC  20530
Telephone:  (202) 616-9100
Fax:  (202) 514-1005
E-mail:  shayna.bloom@usdoj.gov
E-mail:  trevor.blake@usdoj.gov

Counsel for the United States of America

Date: June 9, 2014

KAREN KENNARD, CITY ATTORNEY
B. LEE CRAWFORD, JR., DIVISION CHIEF

By: _____

Dated: October 29, 2014
Karen M. Kennard
State Bar No. 11280700
Email:  karen.kennard@austintexas.gov
B. Lee Crawford, Jr.
State Bar No. 05018520
Email:  lee.crawford@austintexas.gov
City of Austin Law Department
Post Office Box 1088
Austin, Texas 78767-1088
Telephone: (512) 974-2268
Fax: (512) 974-2894

ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN

R. LAWRENCE ASHE, JR.
PAUL R. BARSNESS

By: _____

Dated: October 29, 2014
R. Lawrence Ashe, Jr.
State Bar (Georgia) No. 024500
Email: rla@phrd.com
State Bar (Georgia) No. 597107
Email: prb@phrd.com
Parker, Hudson, Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, GA  30303
Telephone: (404) 523-5300
Fax: (678) 533-7730

ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN

APPROVED AND SO ORDERED, this 7th day of November, 2014. The

Parties are accordingly directed to comply with this Consent Decree.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE